**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SHIRLEY K. COX, )<br>)<br>Plaintiff, )<br>vs. )          1:05-cv-1536-SEB-VSS<br>)<br>JO ANNE B. BARNHART, Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | |

**Entry Discussing Complaint for Judicial Review**

Shirley K. Cox ("Cox") applied for Supplemental Security Income ("SSI") and Disabled Widow's Insurance Benefits ("DWIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423(d), 1382c, and 402 (e) (the "Act"), on June 2, 2004, and October 13, 2004, respectively, asserting an onset date of May 5, 2004. Cox seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications.

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I.  Background**

Cox's applications for SSI and DWIB were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on June 8, 2005. Cox was present, accompanied by her attorney.  Medical and other records were introduced into evidence, and Cox and a vocational expert testified at the hearing.

The ALJ issued a decision on July 27, 2005, denying benefits.  On September 23, 2005, the Appeals Council denied Cox's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Cox met all of the nondisability requirements for DWIB set forth in section 202(e) of the Act, and the prescribed period began August 9, 2004, and ends on February 5, 2010, the month prior to the month she turns 60 years of age; (2) Cox had not engaged in substantial gainful activity since her alleged onset date: (3) the medical evidence indicated that Cox had the following medically determinable impairments: a depressive disorder, a panic disorder without agoraphobia, osteoarthritis, gastritis, reflux, hemolytic anemia, low back pain, status-post laparoscopic cholecystectomy, status-post cesarean sections, right shoulder pain and a hiatal hernia; and (4) Cox did not have any impairment or impairments that significantly limited her ability to perform basic work-related activities and, therefore, she did not have a "severe" impairment.  With these findings in hand, and through the application of applicable rules, the ALJ concluded that Cox was not under a "disability" as defined in the Act at any time through the date of the ALJ's decision and was therefore not eligible for DWIB or SSI.

## II.  Discussion

### A.  Applicable Law

To be eligible for DWIB or SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c. To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

The ALJ denied Cox's application for benefits because he found at step two of the analysis that Cox did not have a severe impairment. Cox asserts several arguments in support of her claim that the ALJ's decision is not supported by substantial evidence.

First, Cox argues that the ALJ erred in determining that Cox's hemolytic anemia was not "severe" because it did not significantly limit her in any way. The ALJ stated:

> With regard to her allegation that she was disabled due to hemolytic anemia, a condition that she has had since childhood, and for which she has a strong family history, the claimant repeatedly told her doctors over a period of time that she had no or minimal symptoms resulting from that condition. (Exhibits U, p. 6; 3F; Z). At worst she had some fatigue during the day and had to rest.

R. at 19.

Cox asserts that the evidence upon which the ALJ relied in concluding that she told doctors over a period of time that she had no symptoms does not support that conclusion. Exhibit U is a statement from Dr. Weddle dated April 19, 2000, that Cox was having no symptoms. (R. at 311). Cox contends that this report was four years before her date of onset and should therefore be given little weight. The other records, 3F and Exhibit Z, are records from an emergency hospital admission in 2003 for depression and suicidal thoughts. Cox argues that any lack of discussion of symptoms from hemolytic anemia during her admission pursuant to an emergency detention order does not reasonably lead to the conclusion that Cox experienced no anemia symptoms at that time. During this admission, however, Cox did report her hemolytic anemia and the medications she took for this condition, and denied having "any significant recent problems with this." (R. at 439).

Cox further notes that she reported severe fatigue to her treating hematologist Dr. Ganjoo on October 17, 2000, August 21, 2001, August 29, 2002, and July 3, 2003. (R. at 341, 338, 336, 86). Cox is correct in her contention that the ALJ failed to mention any of these reports made to this treating physician over a period of almost three years. Counsel discussed this physician's opinions at the beginning and the end of the hearing, (R. at 511-12, 535-37), and yet they were not mentioned in the ALJ's decision. The ALJ did discuss

a number of medical reports which predated Cox's onset date, so the date of Dr. Ganjoo's records would not explain the omission. An ALJ must minimally articulate his reasons for rejecting or crediting evidence of disability, and in particular, he must give good reasons for rejecting a treating physician's opinions. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 200); 20 C.F.R. § 416.927(d)(2) .

Cox notes that she reported lack of energy to Dr. Mason on June 3, 2002, (R. at 332), she reported fatigue to her family physician Dr. Salinas on August 17, 2004, (R. at 127), and at the mental status examination with Dr. Karkut on July 29, 2004.  (R. at 113). She further notes the report of Dr. Wichman indicating that Cox complained of decreased energy from her anemia. (R. at 119).  Cox testified that she had to lay down or sit in a recliner more than once each day to rest because of fatigue. (R. at 520-23, 534-35). Although there were some periods of time during which Cox did not report fatigue, there were also numerous complaints of fatigue noted in the record, both before and after her alleged onset date of disability.

To be considered "severe," an impairment must significantly limit a claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c). The ALJ acknowledged that "at worst," Cox had fatigue during the day and had to rest. (R. at 19). This finding, however, does not support a conclusion that Cox's anemia was not a severe impairment. Dr. Ganjoo opined that Cox's autoimmune hemolytic anemia prognosis, with treatment, was poor, that the condition was reasonably certain to continue throughout her lifetime without significant improvement, and that Cox could not carry out normal activities. (R. at 347-49). Given the fact that the ALJ omitted any reference to this report, and the fact that Cox's fatigue is well-documented throughout the record but not analyzed in terms of its impact on her daily activities, the court cannot trace the path of the ALJ's reasoning from the evidence to his conclusion that Cox's hemolytic anemia was not severe.

Cox further argues that the ALJ's reasons for finding her less than credible were inaccurate and illogical. The ALJ's entire discussion of Cox's credibility was as follows:

> At the hearing the claimant testified under oath that she had panic attacks every week.  However, on close questioning by the undersigned she conceded that she had very few panic attacks and could only remember four since the end of summer 2004.  Even then, the panic attacks she remembered resolved in a few minutes and did not require her to take any medication.  She also was not truthful about her daughter's 100 pound golden retriever, which the claimant gave to her daughter because she could not handle it.  The undersigned found the testimony of the claimant to be less than credible.

(R. at 20).

4

The ALJ failed to recite or discuss the statutory criteria for evaluating a claimant's credibility.  Furthermore, a reading of the transcript does not reflect that Cox conceded that she had very few panic attacks.  (R. at 526-34).  In addition, the ALJ did not explain how Cox "was not truthful" about her daughter's 100 pound golden retriever. (R. at 20).  In sum, the ALJ's evaluation of Cox's credibility was not supported by substantial evidence.

On remand, in light of the tone of the questioning at the hearing, Cox's request that the case be assigned to a different ALJ should be granted.

### III. Conclusion

For the reasons described, the ALJ's decision is not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration.  *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand).  Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 10/26/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana